IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALAL M. ROMAH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 08-908 |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff, Dalal M. Romah, seeks judicial review of a decision of Defendant, Commissioner of Social Security ("the Commissioner"), denying her application for widow's benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Presently before the Court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, Plaintiff's motion for summary judgment will be denied, and the Commissioner's cross-motion for summary judgment will be granted.

**II. CASE HISTORY**

On August 6, 2003, Plaintiff, who was born in Syr, Lebanon, applied for widow's benefits based on the earnings record of her late husband, Joseph M. Romah. In the application, Plaintiff indicated that her date of birth was December 2, 1943, and she included the following statement in the "Remarks" section:

1

> MY ALIEN CARD SHOWS THE DATE OF BIRTH OF 1/21/48. MY
> DRIVERS LICENSE SHOWS THE DATE OF BIRTH OF 3/8/45 AND I
> UNDERSTAND THAT SOCIAL SECURITY SHOWS A DATE OF BIRTH OF
> 1/13/44 ON MY PRIOR CLAIMS RECORD AND OF 1/21/48 ON MY
> ORIGINAL APPLICATION FOR A SOCIAL SECURITY NUMBER.
>
> I HAVE SUBMITTED A TRANSLATION OF A CERTIFICATE OF BAPTISM
> THAT SHOWS MY DATE OF BIRTH AS 12/2/43.
>
> I DID NOT SPEAK ENGLISH WHEN I CAME TO THE US, I STILL DO
> NOT READ OR WRITE ENGLISH.
>
> I HAVE THREE BROTHERS AND FOUR SISTERS. I MAY HAVE GIVEN A
> DATE OF BIRTH OF 1948 TO MAKE MYSELF YOUNGER WHEN I GOT
> MARRIED. I WAS OLDER WHEN I GOT MARRIED AND THE NORM IS TO
> BE MARRIED AT A YOUNGER AGE IN LEBANON. MY MOTHER NEVER
> GAVE HER RIGHT AGE THIS IS WHAT I WAS USED TO DOING. I WILL
> LOOK FOR OTHER DOCUMENTS THAT MAY SHOW MY DATE OF BIRTH SO
> THAT A DECISION CAN BE MADE ON MY BIRTH DATE.

(R. 20-22).[1]

Plaintiff's application for widow's benefits was disapproved on January 15, 2004, based on the determination that Plaintiff's date of birth was January 21, 1948. Therefore, she had not yet attained 60 years of age which is a prerequisite to receiving widow's benefits.[2] (R. 30).

Plaintiff requested reconsideration of the disapproved claim on March 9, 2004, stating that her date of birth was December 2,

---

[1] The following documents were attached to Plaintiff's application for widow's benefits: (a) an Application for a Social Security Number filed by Plaintiff on April 26, 1974, indicating a date of birth of January 21, 1948; (b) a copy of the Pennsylvania Driver's License issued to Plaintiff on January 10, 2002, showing a date of birth of March 8, 1945; and (c) a copy of Plaintiff's Resident Alien Card, showing a date of birth of January 21, 1948. (R. 25-26).

[2] See 42 U.S.C. § 402(e)(1)(B)(i).

2

1943, as evidenced by her Certificate of Baptism. (R. 31). On April 17, 2004, in support of her request for reconsideration, Plaintiff submitted a statement of the reasons she believes her date of birth was December 2, 1943 (R. 32-33), together with the following attachments:

    a.  A translation of the Certificate of Marriage of Plaintiff and her late husband Joseph which shows that they were married in the Parish of St. Georges in Syr, Lebanon on March 9, 1974.[3] (R. 34).

    b.  A translated, certified copy of Plaintiff's Certificate of Baptism which was made on November 5, 1974. The baptism certificate indicates that Plaintiff was born on December 2, 1943 and baptized at the Parish of St. Georges in Syr, Lebanon on January 13, 1944.[4] (R. 36).

    c.  The Immigration and Naturalization Service ("INS") record relating to Plaintiff's entry into the United States which is dated April 24, 1974 and indicates that Plaintiff was born on January 21, 1948. (R. 38).

    d.  A copy of the Certification of Birth of Plaintiff's daughter, Jocelyne, which was originally filed in the Commonwealth of Pennsylvania on May 13, 1975. The birth certificate indicates that Plaintiff's age at the time of Jocelyne's birth was 29.[5] (R. 39).

    e.  A copy of a Pennsylvania Driver's License issued to Plaintiff's brother, Youssef Chahine, on December 20, 2001, which indicates that he was born on January 21,

---

[3] The probative value of Plaintiff's marriage certificate is negligible because neither her date of birth nor her age at the time of the marriage appear on the document.

[4] There is no evidence regarding the date on which Plaintiff's baptism certificate was originally registered at the Parish of St. Georges.

[5] If Plaintiff was born on December 2, 1943 as alleged, she would have been 31 years old at the time of Jocelyne's birth, not 29.

3

    1948 - the same date identified as Plaintiff's date of
    birth in the INS record relating to her entry into the
    United States in April 1974.[6]  (R. 41).

  f. A copy of a health insurance card issued to Youssef
    Chahine on an unknown date which shows a date of birth
    of January 21, 1948.  (R. 41).

  g. A copy of Youssef Chahine's United States Passport
    which was issued on March 21, 1988 and indicates that
    he was born on January 21, 1948.  (R. 42).

  h. A translation of Youssef Chahine's Lebanese Passport
    which was issued on March 22, 1993 and indicates that
    he was born in 1948.  (R. 43-44).

  i. A letter from the Pastor of Our Lady of Victory
    Maronite Church in Carnegie, Pennsylvania dated March
    11, 2004, certifying Plaintiff's age as 29 at the time
    of her daughter's baptism on June 22, 1975.  (R. 46).

  j. A patient registration form for Plaintiff from Prime
    Care Internal Medicine Associates in Homestead,
    Pennsylvania showing two birth dates for Plaintiff:
    March 8, 1945 based on her Pennsylvania Driver's
    License and December 2, 1943 based on the copy of her
    Certificate of Baptism.  (R. 47-48).

Despite the submission of this additional evidence, on July 30, 2004, a reconsideration determination was issued by the Social Security Administration in which the disapproval of Plaintiff's claim for widow's benefits was upheld based on her failure to establish that she met the age requirement of 60 years.  (R. 49-53).

---

[6]The administrative record contains multiple spellings for Plaintiff's maiden name, i.e., "Shahin" (R. 20, 25), "Shahine" (R. 20, 36), "Chahin" (R. 21, 34, 43), "Chahine" (R. 39, 41-42, 46, 57, 67), "Shaheen" (R. 61-63) and "Shaheem" (R. 73-94).  For purposes of consistency, the Court will refer to Plaintiff's maiden name as "Chahine" throughout this Memorandum Opinion.

On October 12, 2004, Plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ") with respect to her application for widow's benefits, together with a certified copy of a Republic of Lebanon Baptism and Confirmation Certificate. The copy of the certificate, which was prepared on August 30, 2004 by an accredited translator, indicates that Plaintiff was baptized and confirmed at the Parish of St. Georges in Syr, Lebanon on January 13, 1944.[7] (R. 54, 57-58).

On the day before the ALJ hearing on March 2, 2006, counsel submitted a certified document from the pastor of the Parish of St. Georges in Syr, Lebanon which was prepared on February 11, 2004 and sets forth the dates on which the children born to Plaintiff's parents were baptized. The document indicates, in relevant part, that Plaintiff and her brother Youssef were baptized on January 13, 1944 and May 19, 1946, respectively. (R. 61-62). Counsel also submitted a translated statement of Plaintiff's eldest brother, "Youssef Zeydan Shaheen called Jamil born ... 1931", in which he states that Plaintiff was born in 1944. (R. 63).

During the hearing before the ALJ, Plaintiff testified that

---

[7]Like the translated copy of Plaintiff's Certificate of Baptism prepared in 1974 (apparently in connection with Plaintiff's emigration to the United States), this translated copy of Plaintiff's Baptism and Confirmation Certificate does not indicate when it was originally registered at the Parish of St. Georges in Syr, Lebanon.

5

she was born in Syr, Lebanon in 1943, and that she was baptized in 1944. (R. 79). With respect to Plaintiff's Application for a Social Security Number which was completed on April 26, 1974 and indicates a date of birth of January 21, 1948, Plaintiff testified that her husband was sick at the time she filed the application. As a result, a neighbor who was Italian and did not speak English well assisted her in completing the application and the wrong date of birth was put on the application. (R. 80-81).

As to her conflicting birth dates, Plaintiff also testified that her father was working in Kuwait at the time of her birth. Therefore, he could not accompany Plaintiff's mother to register her birth. By the time Plaintiff's father was available to register her birth, her brother Youssef had been born. Despite the fact that Youssef is almost three years younger than Plaintiff, they were registered as having been born on the same day. (R. 81-83).

The ALJ also heard testimony from Mahassen Azrul, a friend of Plaintiff's family, at the hearing. In summary, Mrs. Azrul testified that her family was from the same village in Lebanon as Plaintiff's family; that the families lived close to one another; that Plaintiff is approximately two months older than her daughter who was born on February 7, 1944; and that she remembered when Plaintiff was born because she was pregnant at the same time as Plaintiff's mother. (R. 85-88).

6

Finally, due to the illness of Plaintiff's brother Youssef, the ALJ heard testimony from his wife, Jocelyn Chahine. In summary, Mrs. Chahine testified that she had been married to Youssef for 31 years; that she had known Plaintiff and Youssef since she was a little girl because they lived in the same town in Lebanon and their families were friends; that Youssef, who is at least two years younger than Plaintiff, was born in 1946; and that, like Plaintiff, Youssef's immigration documents mistakenly list his date of birth as January 21, 1948.[8] (R. 83-84, 90-91).

Due to Youssef's inability to testify at the hearing on March 2, 2006, the ALJ kept the record open for 30 days to give Plaintiff's counsel the opportunity to submit an affidavit from Youssef. In the affidavit, which was executed on March 22, 2006, Youssef stated that immigration documents often are wrong due to language difficulties; that he was born in 1946, not 1948, as indicated in his immigration documents; that he and Plaintiff are not twins (which is indicated by immigration documents identifying both of their birth dates as January 21, 1948); that Plaintiff is 2½ to 3 years older than him; and that he knows Plaintiff is older because he remembers being in younger classes

---

[8]According to Mrs. Chahine, the dates of birth of the children in her Lebanese town often were wrong because children were not born in hospitals. Rather, mid-wives assisted in the births. To register the birth of a child, parents had to rely on town officials who often failed to comply with registration requests in a timely manner. (R. 91-92).

7

at school and church and Plaintiff looked after him when they walked to the homes of relatives in Lebanon. (R. 67).

On May 17, 2006, the ALJ issued a decision denying Plaintiff's claim for widow's benefits. Specifically, the ALJ concluded that "the oldest and most reliable documentary evidence in the record is consistent with a finding that Ms. Romah's date of birth is January 21, 1948, as determined by SSA, ..." Thus, Plaintiff did not meet the age requirement for widow's benefits. (R. 14-17).

On June 28, 2006, Plaintiff requested review of the ALJ's decision by the Appeals Council.[9] (R. 7). However, the request was denied on April 24, 2008. (R. 3-5). This appeal followed.

### III. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial

---

[9]On August 25, 2006, Plaintiff submitted additional evidence for the Appeals Council's consideration in ruling on her request for review. The additional evidence consisted of a letter from Chorbishop Michael G. Thomas of the Eparchy of Saint Maron of Brooklyn Chancery in Brooklyn, New York dated August 25, 2006 in which he attested to the accuracy of Lebanese baptism records, and an affidavit executed by Plaintiff on August 25, 2006 to clarify her hearing testimony. (R. 71-72). As noted by the Commissioner, Plaintiff refers to Chorbishop Thomas's letter repeatedly in the brief filed in support of her motion for summary judgment. However, the Court's substantial evidence review is limited to the evidence that was before the ALJ at the time of the adverse determination. (Document No. 13). Accordingly, this additional evidence will not be considered by the Court in ruling on the Parties' cross-motions for summary judgment.

evidence, which has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It consists of something more than a mere scintilla, but something less than a preponderance. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). Stated differently, substantial evidence is enough evidence to justify denial of a directed verdict in a jury trial. Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir.2003). Inherent in this deferential standard of review is the rule that even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is also supported by the evidence. Panetis v. Barnhart, 95 Fed.Appx. 454 (3d Cir.2004), citing Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir.1986).

## IV. APPLICABLE SOCIAL SECURITY REGULATIONS

When evidence is needed to prove a claimant's eligibility for Social Security benefits, the claimant is responsible for obtaining and providing the evidence to the Social Security Administration. 20 C.F.R. § 404.704. In deciding whether the evidence produced by a claimant is convincing, the Commissioner considers whether (a) information contained in the evidence was given by a person in a position to know the facts; (b) there was any reason to give false information when the evidence was created; (c) information contained in the evidence was given

9

under oath, or with witnesses present, or with the knowledge there was a penalty for giving false information; (d) the evidence was created at the time the event took place or shortly thereafter; (e) the evidence has been altered or has any erasures on it; and (f) information contained in the evidence agrees with other available evidence, including Social Security Administration records. 20 C.F.R. § 404.708.

When a claimant produces evidence of eligibility that the Commissioner considers "preferred" evidence, it is generally found to be convincing evidence. 20 C.F.R. § 404.709. With respect to age, preferred evidence consists of a birth certificate or hospital birth record recorded before age 5 or a religious record which shows the claimant's date of birth and was recorded before age 5.[10] 20 C.F.R. § 404.716(a). Other evidence of age which may be considered convincing includes: an original family bible or family record; school records; census records; a statement signed by the physician or midwife who was present at the claimant's birth; insurance policies; a marriage record; a passport; an employment record; a delayed birth certificate; the

---

[10]There is no dispute that Plaintiff failed to submit preferred evidence of her age. Although a religious record from Lebanon was submitted to establish Plaintiff's claim that she was born on December 2, 1943, *i.e.*, a certified translation of a Certificate of Baptism which was prepared on November 5, 1974, there is no evidence that the Certificate of Baptism was recorded before Plaintiff was five years old. As a consequence, it does not qualify as preferred evidence under the Social Security Regulations.

10

birth certificate of the claimant's child; or an immigration or naturalization record. 20 C.F.R. § 404.716(b).

**V. PLAINTIFF'S ARGUMENTS**

Plaintiff raises two arguments in support of her motion for summary judgment, which will be addressed separately.

i

Although Plaintiff concedes that the evidence in the administrative record concerning her date of birth is conflicting, she maintains that the ALJ erred in failing to find that she produced the requisite documentation to establish the age requirement for widow's benefits at that time.[11] In support of this argument, Plaintiff cites Sprung v. Weinberger, 385 F.Supp. 74 (D.N.J.1974), and Chan Wai King v. Sullivan, 757 F.Supp. 179 (E.D.N.Y.1991). After consideration, the Court concludes that neither Sprung nor Chan Wai King compel a finding that the ALJ's adverse decision in this case was erroneous. As noted by the Commissioner, the facts presented in Sprung and Chan Wai King are distinguishable from the instant case.

Turning first to the district court's decision in Chan Wai King, the claimant had been born in a rural section of China and resided in Hong Kong before emigrating to the United States. The claimant sought retirement benefits under the Social Security

---

[11]Based on the ALJ's decision, Plaintiff would have met the age requirement for widow's benefits on January 21, 2008. Presumably, she has been receiving such benefits since that date.

11

Act, asserting that she was twelve years older than the age reflected on her Hong Kong identification card and marriage certificate, INS documentation, Social Security card application and original union dues card, and, therefore, she met the age requirement for retirement benefits. An ALJ denied the claimant's application for retirement benefits, rejecting a birth certificate issued by the Republic of China and the claimant's explanation of her reasons for using a later birth date.[12] The claimant appealed the ALJ's adverse decision, and the district court remanded the case for the specific purpose of receiving medical evidence to assist in determining the claimant's true age

---

[12]With respect to the reasons for altering her birth date, the claimant, who was not represented by counsel at the hearing, testified as follows: The claimant's actual date of birth was October 7, 1922. She completed elementary school in 1941, at the age of 18, because her studies had been interrupted by the Sino-Japanese War. After the war, the claimant lived in Hong Kong, where she was able to find work as a dance and music teacher. When the authorities in Hong Kong initiated an identification card requirement, the claimant reported that she had been born in 1934, rather than 1922, on the advice of the school supervisor who told her that, for various reasons, she would not be able to maintain her employment if she stated her true age. After her marriage in Hong Kong in 1963, the claimant emigrated to the United States with her husband who advised her to give the 1934 birth date to INS because it appeared on her Hong Kong identification card and marriage certificate, and he believed an attempt to correct the claimant's age might impede her entry into the United States. After her arrival in the United States, the claimant continued to use 1934 as her date of birth due to fear of difficulties with immigration officials. In 1979, however, the claimant's youngest brother returned to China and, while there, he obtained the claimant's official birth certificate that stated her year of birth was 1922. The ALJ rejected the birth certificate, as well as the claimant's explanation for using a later birth date, concluding that the naturalization papers must control the determination of her age. 757 F.Supp. at 180.

12

and the weight to be given the birth certificate issued by the Republic of China.

On remand, the claimant provided substantial medical evidence regarding her true age from two prominent gerontologists, as well as her treating physician and treating dentist. After a supplemental hearing, the ALJ issued another adverse decision giving little or no weight to the detailed medical findings of the two independent expert gerontologists, the treating physician and the treating dentist. On appeal, the ALJ's decision was vacated and the case remanded for the calculation of benefits. The district court stated in part:

\* \* \*

> Whether the ALJ would have been free to reject Ms. Chan's explanation if it had not been compellingly corroborated, is a question that need not be reached here because Ms. Chan did not ask him to take her word for it. She provided compelling additional evidence that substantiated her claim. Indeed, her explanation could be rejected only by failing to properly evaluate or consider the corroborating evidence she produced. This is precisely what the ALJ did here.

\* \* \*

> The Secretary has not produced medical evidence that contradicts the[] conclusions [of the gerontologists, the treating physician or the treating dentist]. Similarly, he has not pointed to any evidence to suggest that it is not possible for a gerontologist to reach a conclusion as to approximate age of an individual. In fact, the United States Attorney has conceded that medical evidence is properly considered and relevant in this case, Covo v. Gardner, 314 F.Supp. 894, 989 (S.D.N.Y.1970), and he has not disputed Ms. Chan's assertion - supported by extensive citation to medical literature - that it is possible for experts on aging, such as Dr. Cherrick and Dr. Tsai, to

13

> assess age with a reasonable degree of certainty. Plaintiff's Memorandum at 16-23.
>
> Under these circumstances, the ALJ violated the settled law that precludes him from substituting his own judgment for that of competent medical opinion....

757 F.Supp. at 186.

Unlike the claimant in Chan Wai King, Plaintiff did not produce uncontradicted medical evidence to substantiate the claim that she was born on December 2, 1943, which the ALJ impermissibly rejected under well established case law. Rather, the ALJ made a credibility determination as a result of the production of conflicting evidence concerning Plaintiff's actual date of birth, and the Court is compelled to conclude that his credibility determination was supported by substantial evidence. See Panetis v. Barnhart, 95 Fed.Appx. 454 (3d Cir.2004), citing, Ginsburg v. Richardson, 436 F.2d 1146, 1150-51 (3d Cir.1971) (Deference to an ALJ's conclusion is especially high in reviewing credibility determinations, whether of people or documents, regarding age).

As to the district court's decision in Sprung, the claimant in that case sought old age benefits under the Social Security Act based on a date of birth of May 15, 1906, rather than the date of birth of May 15, 1910 which was in all of his official records. After hearing testimony from the claimant and his wife and considering statements from four of the claimant's siblings and from friends concerning the claimant's actual birth date and

14

his reasons for altering the date, the ALJ found in favor of the claimant.[13] Despite the express finding of the ALJ that the claimant and his wife were entitled to belief regarding the only date of birth reflected in the claimant's official documents, the Appeals Council reversed the ALJ's decision. On appeal, the district court reinstated the ALJ's favorable decision, stating: "Our reading of this entire record provides no basis upon which to conclude that the testimony of the plaintiff and his wife was unworthy of belief and palpably should not have been accepted by the Administrative Law Judge." 386 F.Supp. at 77.

In the present case, it is clear that the ALJ considered Plaintiff's explanation for the conflicting evidence regarding her birth date, *i.e.*, her desire to appear younger and language difficulties at the time of her entry into the United States. In fact, the ALJ specifically stated that Plaintiff's testimony "seemed reasonably credible". (R. 15). However, unlike the

---

[13]According to the claimant's testimony, he was born on May 15, 1906 in Poland. During World War II, all of the official records in the town of his birth were destroyed by the Russians who captured and imprisoned him in Siberia for six years. At the time of his capture, all of the claimant's personal papers were taken from him. Following his release from imprisonment, in 1946 or 1947, the claimant went to Austria. To increase his chances of obtaining work, the claimant made himself four years younger by giving his date of birth as May 15, 1910. After officially stating his date of birth as May 15, 1910, the claimant continued to do so on his marriage certificate in 1948, when he migrated to the United States in 1951, on his application for a Social Security number in 1951, on his certificate of naturalization in 1956, and on a census record made in 1960. 386 F.Supp. at 76.

claimant in Sprung whose evidence reflected a single, alternative date of birth, *i.e.*, May 15, 1910, the evidence in this case establishes five different years in which Plaintiff could have been born, *i.e.*, 1943 (R. 36, 48, 57, 61-62, 67), 1944 (R. 57, 61-62, 63), 1945 (R. 26, 48), 1946 (R. 39, 46) and 1948 (R. 25, 26, 38). Although this Court may have viewed the conflicting evidence differently if it had been the factfinder, the ALJ's determination that Plaintiff's date of birth was January 21, 1948 based on her immigration documents was not unreasonable. Simply put, there was enough evidence to justify the denial of a directed verdict on the issue of age if this case had been decided by a jury. Under the circumstances, the ALJ's decision must be affirmed.

### ii

Plaintiff also raises an equal protection argument in support of her motion for summary judgment based on a footnote in the ALJ's decision in which he noted a previous instruction to field employees of the Social Security Administration to view civil and religious birth records from Lebanon as highly unreliable evidence of age, including baptismal certificates from the Maronite Church. *See* POMS GN 00307.625.[14] (R. 15). Because

---

[14]The Social Security Administration's Program Operations Manual System ("POMS") sets forth the internal operating instructions used by field employees when processing claims for Social Security benefits.

16

the ALJ referenced this instruction which is no longer in effect, Plaintiff contends that the ALJ treated her differently due to national origin in violation of the Equal Protection Clause. After consideration, the Court agrees with the Commissioner that Plaintiff's equal protection argument is meritless.

The rescinded instruction in the Social Security Administration's Program Operations Manual System would have applied to the two translated birth certificates submitted by Plaintiff in support of her application for widow's benefits. A review of the ALJ's decision shows that he specifically discussed the baptism certificates and explained his reasons for discounting their probative value, *i.e.*, the first translated baptism certificate was prepared in 1974, which was thirty years after the event, and the second translated baptism certificate was prepared in 2004, which was after Plaintiff had filed her application for widow's benefits.[15] (R. 15-16). There is no indication in the decision that the ALJ impermissibly rejected the baptism certificates on the basis of the rescinded instruction in the Social Security Administration's Program Operations Manual System. Thus, there is no basis for finding that Plaintiff was treated differently on account of her national origin.

---

[15] As noted previously, there is no evidence concerning the date on which Plaintiff's baptism certificate was originally registered at the Parish of St. Georges in Syr, Lebanon.

**VI. CONCLUSION**

Based on the foregoing, judgment will be entered in favor of the Commissioner and against Plaintiff as a matter of law. This decision in favor of the Commissioner should not be construed as a finding by the Court that the testimony of Plaintiff and her witnesses lacked credibility. Rather, the decision simply reflects the Court's conclusion that substantial evidence supported the ALJ's finding that Plaintiff's date of birth was January 21, 1948.

William L. Standish
United States District Judge

Date: March 24, 2009